1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
                                    AT SEATTLE
9

10    SHONN D. COOK,                          CASE NO. C09-0376JLR

11                    Plaintiff,              ORDER ON MOTIONS FOR
                                              SUMMARY JUDGMENT
12              v.

13    RSC EQUIPMENT RENTAL, et al.,

14                    Defendants.

15          This matter comes before the court on the motions for summary judgment filed by

16    Defendants RSC Equipment Rental, Inc. ("RSC") and Robinson Construction Co.

17    ("Robinson") (Dkt. ## 28, 31).  Having considered the submissions of the parties and the

18    materials in the record, and neither party having requested oral argument, the court

19    GRANTS in part and DENIES in part RSC's motion for summary judgment (Dkt. # 28)

20    and GRANTS in part and DENIES in part Robinson's motion for summary judgment

21    (Dkt. # 31).

22

# I.    BACKGROUND

On October 8, 2007, Plaintiff Shonn D. Cook was seriously injured when he fell out of the open gate of a Genie scissor lift at a Lowe's store in Monroe, Washington.  At the time of his accident, Mr. Cook was spray-painting the ceiling of the store.  Mr. Cook states that when he stepped backward on the platform of the scissor lift to review his work, he stepped through the open gate and fell nearly 20 feet onto the concrete floor.  (Cook Dep.[1] 202:12-20.)  Defendant Robinson was the general contractor for the Lowe's project.  At the time of the accident, Mr. Cook was an employee of DM Hoggatt Painting ("Hoggatt"), one of Robinson's subcontractors.[2]  Hoggatt had rented the scissor lift from Defendant RSC, which delivered the scissor lift to the Lowe's jobsite on September 21, 2007.  (*See* 2d Kahler Decl. (Dkt. # 37) Ex. 10.)  Hoggatt employees had been working at the Lowe's site for about 17 days before Mr. Cook's accident.

Mr. Cook was an experienced painter who had used scissor lifts on multiple prior projects.  (Cook Dep. 127:15-129:22.)  There is evidence that Mr. Cook had most recently been trained and certified on scissor lift operation on September 14, 2007, but a fellow Hoggatt employee states that no training took place and that Hoggatt's secretary filled out the certifications.  (Reinhard Decl. Pt. 2 (Dkt. # 31-3) Ex. 3 ("Hoggatt Dep") Ex. 2 (certification card); Richardson Decl. (Dkt. # 35) ¶ 8.)  Nevertheless, it is

---

[1] The parties have submitted multiple excerpts from Mr. Cook's February 22, 2010 deposition.  (Campbell Decl. (Dkt. # 29) Ex. A; Reinhard Decl. Pt. 1 (Dkt. # 31-2) Ex. 1; 2d Kahler Decl. (Dkt. # 37) Ex. 3.)  For simplicity of reference, the court cites directly to the pages of the Cook deposition.

[2] Hoggatt is not a party to this lawsuit.

ORDER- 2

1    undisputed that Mr. Cook received scissor lift training in September 2006, and Mr. Cook

2    states that he was already familiar with scissor lift operation as well as with the scissor

3    lift's user manuals and warning signs.  (Cook Dep. 130:16-133:24; 141:22-142:11.)

4         Mr. Cook understood from his experience that the gate to the scissor lift would

5    automatically slam shut when he entered the lift.  (Cook Dep. 142:12-144:16.)  He

6    cannot, however, recall if the gate latched when he entered the lift on the day of the

7    accident.  (Cook Dep. 151:7-11.)  He could not hear the gate slam because he is deaf in

8    one ear and the Lowe's jobsite was loud.  (Cook Dep. 144:3-6; 146:16-147:8.)  Mr. Cook

9    also does not remember if he took any precautions to ensure that the gate was closed,

10   aside from glancing at it.  (Cook Dep. 144:7-16; 187:4-189:16.)  Mr. Cook agrees that if

11   the safety latch on the gate was working and engaged, the gate would not have opened on

12   its own.  (Cook Dep. 189:9-20.)

13        Robinson's superintendent for the Lowe's project, Lee Randall, completed an

14   accident report after Mr. Cook fell.  (2d Kahler Decl. Ex. 6.)  The report stated that the

15   "spring loaded gate did not close automatically."  (*Id.*)  A subsequent inspection revealed

16   that the two springs on the scissor lift's entry gate were broken.  (*See id.* Ex. 8.)

17                                    **II.    ANALYSIS**

18   **A.    Summary Judgment Standard**

19        Summary judgment is appropriate if "the pleadings, the discovery and disclosure

20   materials on file, and any affidavits," when viewed in the light most favorable to the non-

21   moving party, "show that there is no genuine issue as to any material fact and that the

22   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *Celotex*

ORDER- 3

1   *Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d

2   652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is

3   no genuine issue of material fact and that he or she is entitled to prevail as a matter of

4   law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-

5   moving party "must make a showing sufficient to establish a genuine dispute of material

6   fact regarding the existence of the essential elements of his case that he must prove at

7   trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.  The non-

8   moving party "must present affirmative evidence to make this showing."  *Id.*

9   Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine issues of

10  material fact exist are insufficient," and a mere scintilla of evidence supporting a party's

11  position is also inadequate.  *Id.*

12  **B.    RSC's Motion for Summary Judgment**

13          RSC contends that it is entitled to summary judgment on Mr. Cook's claims

14  against it because Mr. Cook cannot present evidence establishing (1) that the springs

15  were already broken when RSC delivered the scissor lift to the Lowe's jobsite; (2) that

16  the broken springs were a proximate cause of his accident; and (3) that any lack of

17  warnings was a proximate cause of his accident.

18          1.  <u>RSC's Motion to Strike the Testimony of Richard Gill</u>

19          RSC moves to strike the testimony of Mr. Cook's expert witness, Richard Gill,

20  Ph.D., a human factors engineering consultant and professor of mechanical engineering.

21  RSC objects to Dr. Gill's testimony regarding his opinion that it was likely that the

22  springs on the scissor lift gate were already broken before RSC delivered the lift to the

ORDER- 4

1   Lowe's job site.  (*See* 2d Kahler Decl. Ex. 12 ("Gill Dep.") 16:21-23.)  RSC further

2   objects to Dr. Gill's testimony that Mr. Cook's failure to detect the difference between a

3   spring-loaded and a nonspring-loaded gate could be explained because detecting the

4   absence of a stimulus is "in general  . . . not the way the human perceptual system

5   works."  (Gill Dep. 22:17-23:2; 102:7-20.)  RSC contends that Dr. Gill's testimony is

6   inadmissible because Dr. Gill had no factual basis for his opinions and the opinions are

7   unreliable.

8          Federal Rule of Evidence 702 provides,

9          If scientific, technical, or other specialized knowledge will assist the trier of
           fact to understand the evidence or to determine a fact in issue, a witness
10         qualified  as  an  expert  by  knowledge,  skill,  experience,  training,  or
           education, may testify thereto in the form of an opinion or otherwise, if (1)
11         the testimony is based upon sufficient facts or data, (2) the testimony is
           the  product  of  reliable  principles  and  methods,  and  (3)  the  witness  has  applied
12         the principles and methods reliably to the facts of the case.

13  Fed. R. Evid. 702.  Having reviewed Dr. Gill's deposition testimony, curriculum vitae

14  (2d Kahler Decl. Ex. 20), expert report (Reinhard Decl. (Dkt. # 32) Ex. 7 ("Gill

15  Report")), and declaration (Gill Decl. (Dkt. # 49)), as well as the relevant case law, the

16  court finds that Dr. Gill's testimony meets the requirements of Rule 702.  The court

17  therefore denies RSC's motion to strike Dr. Gill's testimony.  RSC's objections to Dr.

18  Gill's testimony can be addressed at trial through rebuttal witnesses and cross-

19  examination, and the jury can determine how much weight to give to Dr. Gill's opinions.

20         2.  Failure to Inspect

21         Mr. Cook alleges that RSC negligently failed to conduct a reasonable inspection of

22  the scissor lift before delivering it to the Lowe's jobsite, and that this negligence resulted

1  in his injuries.  Because Mr. Cook's claim against RSC is one of common law

2  negligence, "[h]e is entitled to a trial unless [RSC] demonstrates that he cannot establish

3  duty, breach, proximate cause, or damage."  *Gall v. McDonald Indus.*, 926 P.2d 934, 938

4  (Wash. Ct. App. 1996).  RSC does not contest that it owed Mr. Cook a duty or that Mr.

5  Cook suffered damage.  Rather, RSC contends that Mr. Cook cannot establish that it

6  breached its duty or that any breach was a proximate cause of his injury.

7         *a.  Breach of Duty*

8         Generally, the supplier of a chattel owes a duty of reasonable care when it delivers

9  a chattel for use by another.  *Id.*  The supplier owes this duty to those foreseeably put at

10  risk by its delivery of the chattel.  *Id.* at 938-39. The Washington Court of Appeals has

11  stated,

12        Generally speaking, the supplier performs its duty by taking such action or
      combination of actions as a reasonable person would take under the same or

13        similar circumstances.  Under particular circumstances, then, the supplier
      may have a duty to inspect and repair the chattel so that a reasonable person

14        would think it safe; to warn of the chattel's condition in such fashion that a
      reasonable person would expect the recipient to correct or avoid any unsafe

15        condition; or to engage in some combination of these approaches.

16  *Id.* at 939.

17         RSC concedes that it had a duty to "'make a reasonable inspection' of the scissor

18  lift before delivery and 'then either to repair any dangerous defects that [it] discover[ed]

19  or to warn those who might be expected to use it of the defects.'"  (RSC Mot. at 15

20  (quoting *Larner v. Torgerson Corp.*, 613 P.2d 780,783 (Wash. 1980)).)  "'This duty

21  arises at the time that the supplier transfers possession and control to the insured.'"  (*Id.*

22  (quoting *Larner*, 613 P.2d at 783)).  RSC contends that Mr. Cook cannot show that RSC

1    breached this standard of care because, it argues, the evidence is undisputed that its

2    employees inspected the scissor lift, including its springs, before delivering the lift to the

3    Lowe's jobsite; that no one at the jobsite reported broken springs; and that there is no

4    reliable evidence to confirm when the springs broke.

5           The court finds that Mr. Cook has met his burden to show issues of material fact

6    regarding whether RSC performed a reasonable inspection of the scissor lift.  First,

7    although RSC's field service mechanic, Randy Fox, testified that he inspected the scissor

8    lift when it was returned to RSC from its prior renter, he also testified that he spent

9    "maybe five, ten minutes" to perform an inspection which requires the mechanic to check

10   23 items.  (Fox Dep. 10:12-20; 2d Kahler Decl. Ex. 15; *see also id.* Ex. 16 ("Long Dep.")

11   19:11-14 (testifying that it took three to five minutes to inspect a scissor lift).)  Moreover,

12   although the checklist includes an item for inspecting the platform rails and gate latch for

13   damage, it does not include a specific item for inspecting the gate springs, supporting the

14   inference that a mechanic could miss the springs even if he performed a complete

15   inspection.  (*See* 2d Kahler Decl. Ex. 15.)  Finally, Mr. Fox testified that RSC inspected

16   the lifts when they were returned from the previous renter and did not inspect them again

17   before renting them to someone else.  (Fox Dep. 12:9-21.)  RSC last inspected the lift on

18   September 12, 2007, nine days before it was delivered to the job site.  (2d Kahler Decl.

19   Ex. 14.)

20          Mr. Cook has also presented evidence establishing issues of material fact

21   regarding whether the springs were broken before the scissor lift was delivered to the

22   Lowe's jobsite.  Noting that the two springs were independent components, that the lift

1  was delivered to Lowe's with over 292 hours on the hour meter, and that the hour meter

2  logged only eight additional hours of use while it was in service at Lowe's, Dr. Gill

3  opined that it was "highly unlikely" that both independent springs would fail "within

4  such a short period of time." (Gill Dep. 16:4-23; 17:1-3; *see* 2d Kahler Decl. Ex. 10.) He

5  stated that his opinion was corroborated by the fact that RSC had replaced both springs

6  on a similar lift because they had failed in less than 170 hours. (Gill Dep. 18:7-22.) Dr.

7  Gill agreed that there was no evidence that the springs did not break onsite, but stated that

8  "basic engineering failure analysis would tell you if you have two components that are

9  independent and failed, they likely didn't fail at the same time" and that it was unlikely

10  that both components failed "in the two-and-a-half percent of its total use." (Gill Dep.

11  104:1-24.) Further, RSC's mechanics testified that if the springs were broken, the lift

12  should not have been rented out. (Fox Dep. 18:13-16; Long Dep. 89:10-18.)

13      Viewing this evidence and the reasonable inferences therefrom in the light most

14  favorable to Mr. Cook, the court concludes that Mr. Cook has met his burden to establish

15  a genuine issue of material fact regarding whether RSC breached its duty to perform a

16  reasonable inspection before transferring the scissor lift to Hoggatt.

17          b.  *Proximate Cause*

18      "Proximate cause is defined as a cause which in a natural and continuous

19  sequence, unbroken by a new, independent cause, produces the event, and without which

20  that event would not have occurred." *Bernethy v. Walt Failor's, Inc.*, 653 P.2d 280, 283

21  (Wash. 1982). "The question of proximate cause is for the jury, and it is only when the

22

1   facts are undisputed and the inferences therefrom are plain and incapable of reasonable

2   doubt or difference of opinion that it may be a question of law for the court." *Id.*

3       RSC argues that summary judgment is appropriate because Mr. Cook's failure to

4   ensure that the gate on the scissor lift was latched was the sole proximate cause of his

5   accident.  RSC relies on its expert, Alan Topinka, PE, who stated that the gate was not

6   designed to latch automatically when closed and that functional springs would not ensure

7   that the gate would have latched.  (Campbell Decl. Ex. F ("Topinka Report.") at 1; 2d

8   Kahler Decl. Ex. 17 ("Topinka Dep.") 38:12-19.)  Mr. Topinka also opined that the

9   broken springs did not contribute to Mr. Cook's accident because Mr. Cook should not

10  have relied on the springs to shut the safety gate.  (Topinka Dep. 66:3-10.)  As a result,

11  RSC contends, the accident could have occurred even if the springs functioned properly.

12      Mr. Cook counters with the opinion of its experts, Dr. Gill and Ms. Joellen Gill,

13  who opined that the primary cause of Mr. Cook's fall was the defective condition of the

14  aerial platform on the scissor lift.  Specifically, they opined that the safety gate is

15  supposed "to automatically close any/every time it is opened" and that it "failed to do so

16  because the hinge spring system was not properly maintained/adjusted."  (Gill Report at

17  1.)  They add that Mr. Cook reasonably expected, based on his prior experience, that the

18  gate on the scissor lift would automatically close.  (*Id.* at 2.)  In addition, as explained

19  above, Mr. Cook has presented evidence from which a jury could infer that the springs

20  were broken before RSC delivered the lift to the Lowe's job site.  (*See* Gill Report; Gill

21  Dep. 16:4-18:22.)  As the experts have offered contrary explanations of how a properly

22  functioning scissor lift should work, the court finds that Mr. Cook has presented evidence

ORDER- 9

1   establishing a genuine issue of material fact regarding whether a gate with properly

2   maintained springs should have latched automatically.

3        Finally, although Mr. Cook concedes that he did not latch the gate, this concession

4   does not preclude recovery.  To the contrary, Washington recognizes contributory fault;

5   as a result, even if the jury finds that Mr. Cook's fault contributed to his accident, Mr.

6   Cook may nevertheless recover a portion of his damages if the jury finds that RSC was

7   also at fault.  RCW 4.22.005 ("In an action based on fault seeking to recover damages for

8   injury or death to person or harm to property, any contributory fault chargeable to the

9   claimant diminishes proportionally the amount awarded as compensatory damages for an

10  injury attributable to the claimant's contributory fault, but does not bar recovery."); *see*

11  *Gall*, 926 P.2d at 942.

12       For these reasons, the court finds, viewing the evidence in the light most favorable

13  to Mr. Cook, that Mr. Cook has met his burden to present evidence establishing a genuine

14  issue of material fact as to whether RSC's alleged failure to properly inspect the lift was a

15  proximate cause of his injuries.  Accordingly, the court denies RSC's motion for

16  summary judgment on this claim.

17       3.  Failure to Warn

18       In his complaint, Mr. Cook alleged that RSC had a duty "to exercise ordinary care

19  to maintain its rental equipment in a proper operating condition" and a duty to "inspect

20  the equipment that it rented to others to make sure . . . that legible warnings were in place

21  on the machinery."  (Am. Compl. (Dkt. # 11) ¶¶ 4.1-4.2.)  Mr. Cook alleged that RSC

22  breached these duties when it provided "a defective and dangerous aerial lift that also

ORDER- 10

1    lacked proper warnings."  (Am. Compl. ¶ 4.3.)  As a result, Mr. Cook alleges, the "gate

2    malfunctioned, and [Mr. Cook] was severely injured."  (Am. Compl. ¶ 4.4.)

3           RSC contends that any alleged lack of warnings on the scissor lift was not the

4    proximate cause of Mr. Cook's accident.  RSC points out that Mr. Cook was an

5    experienced user of scissor lifts, had been trained on their operation on more than one

6    occasion, was familiar with the operating manual for the scissor lift, had read the warning

7    signs before, and that the warning sign instructing the operator to close the gate was

8    present on the scissor lift before the accident.  (RSC Mot. at 17-18.)  Accordingly, RSC

9    argues, because Mr. Cook was aware of the risk of not securing the gate behind him, any

10   alleged failure to provide legible warnings on the scissor gate was not the proximate

11   cause of the accident.  Mr. Cook does not respond to RSC's argument that the damaged

12   warning placards did not proximately cause his accident.

13          The court notes that it is not clear that Mr. Cook has brought a claim based solely

14   on RSC's alleged failure to warn him.  Rather, Mr. Cook cites the damage to the warning

15   placards as evidence supporting his contention that RSC did not perform an adequate

16   inspection of the scissor lift.  (Resp. to RSC Mot. (Dkt. # 36) at 7-8.)  To the extent he

17   has brought a claim that RSC's alleged failure to provide adequate warnings caused his

18   injuries, however, the court considers Mr. Cook's failure to respond as an abandonment

19   of the claim and grants RSC's motion for summary judgment accordingly.  *See Ramirez*

20   *v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009).  The court's ruling does not

21   foreclose Mr. Cook from arguing at trial that the damaged or missing warning placards

22

1  are evidence of RSC's alleged failure to inspect the scissor lift adequately before

2  delivering it to Hoggatt.

3  **C.    Robinson's Motion for Summary Judgment**

4      Robinson contends that it is entitled to summary judgment because Mr. Cook

5  cannot establish a genuine issue of material fact regarding its breach of either a common-

6  law or statutory duty.

7      1.   Common-Law Duty of Care

8      "At common law, one who hires an independent contractor is not generally liable

9  for injuries to employees of the independent contractor." *Stute v. P.B.M.C.*, 788 P.2d

10  545, 548 (Wash. 1990) (citing *Kelley v. Howard S. Wright Constr. Co.*, 582 P.2d 500,

11  505 (Wash. 1978)).  An exception arises, and the employer may be liable, when the

12  employer retains the right to direct the manner in which the work is performed.  *Kamla v.*

13  *Space Needle Corp.*, 52 P.3d 472, 476 (Wash. 2002).  However, "[t]he retention of the

14  right to inspect and supervise to insure the proper completion of the contract does not

15  vitiate the independent contractor relationship."  *Hennig v. Crosby Group*, 802 P.2d 790,

16  792 (Wash. 1991) (quoting *Epperly v. Seattle*, 399 P.2d 591, 596 (Wash. 1965)).

17      Robinson contends that it did not owe Mr. Cook a common law duty of care

18  because Hoggatt was an independent contractor and Robinson did not retain control over

19  the manner in which Mr. Cook performed his work.  Mr. Cook does not respond to

20  Robinson's argument regarding a common-law duty of care.  Mr. Cook's failure to

21  respond may be taken as an abandonment of claims based on Robinson's breach of a

22  common-law duty of care.  *See Ramirez*, 560 F.3d at 1026.  Nevertheless, having

1    reviewed the contract between Robinson and Hoggatt, the court agrees that, although

2    Robinson retained a contractual right to oversee Hoggatt's compliance with the contract,

3    it did not retain the right to control the manner in which Hoggatt and its employees

4    performed their work.  (*See* Moisan Decl. (Dkt. # 31-4) Ex. 1 at 1, 6 ¶¶ 3.1-3.5.)  As a

5    result, the court finds that Robinson has met its initial burden to show that it did not owe

6    a common-law duty of care to Hoggatt's employees.  The court therefore grants summary

7    judgment to Robinson to the extent Mr. Cook raises claims based on a breach of

8    Robinson's common-law duty of care.

9        2.  Statutory Duty of Care

10        The Washington Industrial Safety and Health Act ("WISHA"), chapter 49.17

11   RCW, provides that each employer "[s]hall comply with the rules, regulations, and orders

12   promulgated under this chapter."  RCW 49.17.060(2).  Pursuant to RCW 49.17.060(2)

13   and its counterpart regulation, WAC 296-155-040(2),[3] general contractors have a

14   nondelegable duty to comply with or to ensure compliance with WISHA and its

15   regulations.  *Stute*, 788 P.2d at 550.  The general contractor bears the "primary

16   responsibility for compliance with safety regulations because the general contractor's

17   innate supervisory authority constitutes sufficient control over the workplace."  *Id.*  To

18   that end, "[i]t is the general contractor's responsibility to furnish safety equipment or to

19

20        [3] WAC 296-155-040(2) provides:

21        Every employer shall require safety devices, furnish safeguards, and shall adopt
        and use practices, methods, operations, and processes which are reasonably
        adequate to render such employment and place of employment safe.  Every
22        employer shall do everything reasonably necessary to protect the life and safety of
        employees.

ORDER- 13

1  contractually require subcontractors to furnish adequate safety equipment relevant to their

2  responsibilities." *Id.* at 551.

3       *a. Contract*

4       Robinson first contends that by contractually requiring Hoggatt to observe safety

5  regulations, it satisfied its duties under RCW 49.17.060(2) and *Stute*.  The Washington

6  Court of Appeals has held, however, that while provisions of the contract between a

7  general contractor and a subcontractor may be admissible as direct evidence of the steps

8  the general contractor took to comply with WISHA safety regulations, the contract is not

9  admissible to show that the general contractor delegated responsibility for compliance

10  with the regulations.  *Degroot v. Berkley Constr., Inc.*, 920 P.2d 619, 621 (Wash. Ct.

11  App. 1996).  *DeGroot* makes clear that the existence of a contractual provision, without

12  more, does not establish that the general contractor satisfied its duty to comply with

13  WISHA.  (*See id.*)  Accordingly, the provision in the contract between Robinson and

14  Hoggatt that places responsibility for compliance with state regulations on Hoggatt does

15  not, on its own, satisfy Robinson's burden to show that it is entitled to judgment as a

16  matter of law that it satisfied its statutory duty of care to Mr. Cook.

17       *b. WISHA Regulations*

18       Robinson further contends that Mr. Cook has not established a prima facie case

19  that it violated any WISHA regulations.  Robinson cites Washington cases reviewing

20  challenges to citations issued by the Washington State Department of Labor and Industry

21  ("L&I") for the proposition that Mr. Cook must prove the following elements: "(1) the

22  cited standard applies; (2) the requirements of the standard were not met; (3) employees

1    were exposed to, or had access to, the violative condition; [and] (4) the employer knew

2    or, through the exercise of reasonable diligence, could have known of the violative

3    condition."  (Robinson Mot. at 21 (quoting *Wash. Cedar & Supply Co. v. Dep't of Labor*

4    *& Indus.*, 83 P.3d 1012, 1016 (Wash. Ct. App. 2004) (setting forth the elements that L&I

5    must prove in order to establish a prima facie case of a "serious violation" of a WISHA

6    regulation)).)

7         Robinson has not cited, nor has the court identified, any Washington decisions

8    applying L&I's test for a "serious" WISHA violation in the context of a tort suit brought

9    by an injured employee.  Nevertheless, Robinson contends that Mr. Cook cannot make

10   out a prima facie case of a serious violation of WAC 296-800-11030, a WISHA

11   regulation which provides that an employer must "take responsibility for the safe

12   condition of tools and equipment used by employees," and that this responsibility

13   "applies to all equipment, materials, tools, and machinery whether owned by the

14   employer or another firm or individual."   Robinson asserts that no violation can be made

15   out because (1) there is no evidence that Robinson knew or should have known of any

16   safety violation; and (2) there is evidence that Robinson and Hoggatt held weekly safety

17   meetings, that Mr. Cook attended these meetings, and that Robinson would have acted on

18   any safety violation if it had found them on its safety walkthroughs.

19        Mr. Cook does not respond to Robinson's argument regarding WAC 296-800-

20   11030.  Instead, Mr. Cook asserts that Robinson breached its duty to comply with or to

21   ensure compliance with four other WISHA regulations:  WAC 296-869-60035, 296-869-

22   40020, 296-869-40005, and 296-869-40010.

ORDER- 15

1                           i.   WAC 296-869-60035

2          First, Mr. Cook asserts that Robinson breached its duties under WAC 296-869-

3    60035, which requires the employer to have the operator of an elevating work platform

4    make sure that "[g]uardrails are installed and access gates or openings are closed per the

5    manufacturer's instructions" and that "[a]ll persons on the platform are wearing fall

6    protection devices and other safety gear if required."  Mr. Cook points to the operator's

7    manual for the model of scissor lift used by Mr. Cook on the day of his accident.  (1st

8    Kahler Decl. (Dkt. # 34) Ex. 4.)  The operator's manual states, "Occupants should wear a

9    safety belt or harness and comply with applicable governmental regulations" and directs

10   the operator to "Attach the lanyard to the anchor provided in the platform."  (*Id.* at 5.)  It

11   is undisputed that Mr. Cook was not wearing a safety belt, harness, or lanyard while he

12   operated the scissor lift.  (*See* Cook Dep. 160:19-161:18.)

13         Robinson counters that fall protection equipment such as a harness and lanyard is

14   not required in scissor lifts like the one used by Mr. Cook on the day of his accident.

15   Robinson refers the court to WAC 296-869-60040, which requires an employer to

16   "[m]ake sure all persons on the platform of boom-supported elevating work platforms

17   wear a full body harness and lanyard fixed to manufacturer provided and approved

18   attachment points," and specifies that "guardrails are the primary means of fall protection

19   for manually propelled elevating work platforms."  Robinson contends that a scissor lift

20   is a "manually propelled elevating work platform" and that, as a result, the guardrails

21   provided the only fall protection required under WISHA.  It is not clear on the record

22   before the court, however, that this is true.  Mr. Cook testified that he drove the scissor

ORDER- 16

1  lift, which suggests that the scissor lift was self-propelled rather than manually-propelled.

2  *See* WAC 296-869-700 (defining "manually propelled elevating work platform" and

3  "self-propelled elevating work platform"); Cook Dep. 193:1-9.  In addition, Robinson

4  relies on testimony of Hoggatt and Robinson employees stating their belief that fall

5  protection is not required when using a scissor lift.[4]  That the Hoggatt and Robinson

6  employees did not believe that fall protection equipment was required when operating the

7  scissor lift does not prove that such protection was not required.  Because it is undisputed

8  that Robinson did not require employees on its jobsite to use fall protection equipment

9  when operating scissor lifts, and because it is unresolved on the record before the court

10  whether fall protection was required under WISHA, the court finds that Mr. Cook has

11  met his burden to establish a genuine issue of material fact regarding whether Robinson

12  breached its duty to comply with or to ensure compliance with WAC 296-869-60035.

13         ii.  WAC 296-869-40020

14      Mr. Cook also asserts that Robinson failed to comply with or to ensure compliance

15  with WAC 296-869-40020, which requires an employer to "[m]eet the requirements of

16  safety-related bulletins as received from the manufacturer, dealer, or owner."  Mr. Cook

17  points to Customer Safety Bulletin # 2100, which RSC provided with the scissor lift.  (1st

18

19      [4] (*See* Cook Dep. 160:19-161:18 (Hoggatt employees never used a harness or lanyard in a 4x8 scissor lift); Supp. Reinhard Decl. (Dkt. # 43) Ex. 1 ("Moisan Dep.") 30:17-31:4 (fall

20  protection only required if the painter is working outside of the rails of the lift); *id.* Ex. 2 ("Pearson Dep.") 25:15-26-7 (fall protection only required in California, but would expect that it would be used if a safety bulletin from rental company stated that it was required); *id.* Ex. 3

21  ("Jackson Dep.") 32:4-33:1 (similar); *id.* Ex. 4 ("Bowers Dep.") 61:8-20 (harness was not required in a Genie scissor lift because of the guardrails; but harness was required on lifts that

22  "go higher and drive faster").  *But see* Long Dep. 93:1-20 (RSC's mechanic, stating that he always used a lanyard when working on scissor lifts).)

1 Kahler Decl. Ex. 3 at RSC 00219 ("Bulletin").)  Under the subheading "Safety

2 Precautions," the Bulletin states, in relevant part:

3      1.    Personal protective equipment required by State and Federal OSHA
            must be worn when using this equipment. Check with your employer

4             before operating.

5      2.    Always wear your safety belt and lanyard when operating this unit.

6 (*Id.*)  As the court stated above, it is undisputed that Mr. Cook was not wearing a safety

7 belt or lanyard when operating the scissor lift.  Robinson contends that, as a matter of

8 law, these provisions should be read in conjunction such that an operator is required to

9 wear a safety belt and lanyard only when they constitute "personal protective equipment

10 required by State and Federal OSHA."  The court disagrees that this is the only

11 reasonable reading of the Bulletin.  The Bulletin can also reasonably be read as stating

12 that, while additional personal protective equipment may be required under state and

13 federal law, at minimum the operator must always wear a safety belt and lanyard when

14 operating the scissor lift.  Accordingly, the court finds that Mr. Cook has met his burden

15 to establish a genuine issue of material fact regarding whether Robinson failed to satisfy

16 its duty to comply with WAC 296-869-40020.

17                iii.  WAC 296-869-40005 and 296-869-40010

18     Finally, Mr. Cook asserts that Robinson failed to comply with or ensure

19 compliance with WAC 296-869-40005 and 296-869-40010, which govern inspection of

20 elevating work platforms.  WAC 296-869-40005 requires an employer to "[i]nspect and

21 maintain elevating work platforms to keep them in proper operating condition" and to

22 "[i]mmediately remove from service any elevating work platform that is not in proper

ORDER- 18

operating condition."  WAC 296-869-40010 requires an employer to "[d]o a prestart

inspection of the elevating work platform according to Table 2, Elevating Work Platform

Inspections."[5]  To support his contention that Robinson was not ensuring compliance

with these regulations, Mr. Cook cites the testimony of Lee Randall, Robinson

Construction's superintendant at the Lowe's job site.  Mr. Randall testified that he

understood the subcontract to provide that Robinson was not directly responsible for

inspecting the lifts or for training its subcontractor's employees, and that he did not know

whether Hoggatt was performing daily inspections.  (1st Kahler Decl. Ex. 1 ("Randall

Dep.") 21:16-22:8.)  Mr. Cook has also presented evidence supporting the inference that

the springs on the lift may have already been broken before the lift was delivered to the

Lowe's jobsite, and that, in any event, the springs were likely broken before Mr. Cook's

accident.  (*See supra* Part II.B.2.a; *see also* Topinka Report at 8 (opining that the springs

"more probably than not had failed prior to the incident").)  Finally, one of Mr. Cook's

fellow Hoggatt employees states that he noticed that "something was not working right

with the gate" when he used the scissor lift several days before Mr. Cook's accident and

that the "gate did not close automatically on that lift like the other ones."  (Richardson

Decl. ¶ 5.)  He states that he reported this problem to Terry Bowers, Hoggatt's

---

[5] Table 2 specifies that a prestart inspection is required at the beginning of each shift which includes "a visual inspection and functional test" of "at least the following:" operating and emergency controls; safety devices; personal protective devices, including fall protection; air, hydraulic and fuel system leaks; cables and wiring harness; loose or missing parts; tires and wheels; placards, warnings, control markings, and required manuals; outriggers, stabilizers, and other structures; guardrail system; and items specified by the manufacturer.  WAC 296-869-40010.

1   superintendent at the Lowe's site.  (*Id.*)  It is undisputed that the lift was not removed

2   from service until after Mr. Cook's accident.

3          The court finds that this evidence, viewed in the light most favorable to Mr. Cook,

4   supports a reasonable inference that Robinson may have failed to comply with WAC

5   296-869-40005 and 296-869-40010.  Accordingly, the court finds that Mr. Cook has met

6   his burden to establish a genuine issue of material fact regarding whether Robinson

7   satisfied its statutory duty of care to comply with or to ensure compliance with WISHA

8   regulations under RCW 49.17.060(2) and *Stute*.

9          3.  "Unpreventable Employee Misconduct"

10         Finally, Robinson contends that, even if Mr. Cook can establish that Robinson

11   violated a WISHA regulation, it is not liable for his injuries because, as a matter of law,

12   the accident involved "unpreventable employee misconduct."  Under Washington law, if

13   L&I establishes a prima facie case of a serious violation of a WISHA regulation, the

14   burden shifts to the employer, who can avoid a finding against it by establishing that

15   "unpreventable employee misconduct" was the actual cause of the violation.  *J.E. Dunn*

16   *Nw. Inc. v. Wash. State Dep't of Labor & Indus.*, 156 P.3d 250, 255 (Wash. Ct. App.

17   2007) (quoting RCW 49.17.120(5)).  Robinson, however, has not directed the court to

18   any case holding that the affirmative defense of "unpreventable employee misconduct" is

19

20

21

22

1  available to an employer who has been sued in tort by an injured employee.[6]  To the

2  contrary, as discussed above, Washington recognizes contributory fault, and as a result,

3  even if the jury finds that Mr. Cook's conduct contributed to his accident, Mr. Cook can

4  recover a portion of his damages if the jury also finds that Robinson breached its duty to

5  comply with or ensure compliance with WISHA regulations.  RCW 4.22.005.[7]

6        For the foregoing reasons, the court denies Robinson's motion for summary

7  judgment regarding breach of its statutory duty of care to comply with or ensure

8  compliance with WISHA regulations.

9              **III.    CONCLUSION**

10        For the foregoing reasons, the court GRANTS in part and DENIES in part RSC's

11  motion for summary judgment (Dkt. # 28) and GRANTS in part and DENIES in part

12  Robinson's motion for summary judgment (Dkt. # 31).

13        Dated this 11th day of August, 2010.

14

15  _____

16  JAMES L. ROBART
    United States District Judge

17

18  [6] *See* 33 *Wash. Prac., Wash. Constr. Law Manual* § 15:4 (2009 ed.) (discussing WISHA
    Regional Directive 27.00, which sets forth an affirmative defense to claimed violations of
    WISHA regulations, and noting that no Washington court has addressed whether a general

19  contractor can assert this affirmative defense against a personal injury claim by a subcontractor's
    employee).

20  [7] *See also Taylor v. Kahne Corp.*, No. C05-0243L, 2006 WL 691995, at *3 (W.D. Wash.

21  Mar. 14, 2006) ("Although [the deceased] obviously had the last best chance to avoid the
    accident that killed him, the same can be said for most workplace accidents: the fact that an

22  employee or his direct employer could have taken their own safety precautions does not absolve
    defendants of their independent contractual and regulatory duties to comply with WISHA.").